IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PA EDUCATION ASSOCIATION<br>655 K Street, Suite 700<br>Washington, D.C. 20001-2385,<br><br>and<br><br>AMERICAN ACADEMY OF PHYSICIAN<br>ASSOCIATES<br>2318 Mill Road, Suite 1300<br>Alexandria, VA 22314,<br><br>       Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION<br>400 Maryland Ave SW,<br>Washington, D.C. 20202, and<br><br>LINDA MCMAHON, in her official capacity<br>as the Secretary of Education,<br>United States Department of Education<br>400 Maryland Ave SW,<br>Washington, D.C. 20202,<br><br>       Defendants. | CASE NO.: |

**COMPLAINT**

**INTRODUCTION**

1.     This litigation is brought by the PA Education Association ("PAEA") and the American Academy of Physician Associates ("AAPA"), (collectively "Associations"), to challenge the lawfulness of a new Final Rule published by the United States Department

1

of Education ("Department") that denies higher loan limits to students aspiring to become Physician Assistants/Associates ("PAs").

2.      Since 2006, graduate and professional students have relied upon the William D. Ford Federal Direct Loan Program ("Direct Loan Program") including Grad PLUS loans to cover the student's full cost of attendance, including tuition and living expenses, to complete their education. This program allowed students pursuing advanced degrees, including PA degrees, to finance the full cost of their education without relying on private loans which often have higher interest rates and fewer borrower protections.

3.      In 2025, as part of the One Big Beautiful Bill Act ("the Act"), Congress eliminated the uncapped loans offered under the Grad PLUS program, thus limiting graduate student borrowing to Direct Unsubsidized loans, but specifically allowing a higher loan limit for "professional" students. "One Big Beautiful Bill Act," Pub. L. No. 119-21, § 81001, 139 Stat. 72, 335 (2025); 20 U.S.C. § 1087e.

4.      In the Act, Congress adopted a definition of "professional student" using the long-standing regulatory definition of "professional degree." PA degrees already met the regulatory definition of professional degree, and so PA students, therefore, still meet the same, now statutory, definition.  This should avail PAs of the highest level of federal Direct Unsubsidized loans, which, though capped, provides a level of funding necessary to cover the costs of a PA degree.

5.      On January 30, 2026, the U.S. Department of Education ("the Department") published a Notice of Proposed Rulemaking to amend the regulations for the Direct Loan Program, in accordance with the Act.  *Reimagining and Improving Student Education*, 91 Fed. Reg. 4254 (proposed Jan. 30, 2026) ("NPRM").

6.      After a comment period, the Department published its Final Rule on May 1, 2026. *Reimagining and Improving Student Education – Federal Student Loan Program Final Regulations,* 91 Fed. Reg. 23768 (May 1, 2026) ("Final Rule").

2

7.      In the Final Rule, the Department promulgated a new definition of professional degree, adding additional requirements not contained in the new statutory definition.

8.      The extra-statutory requirements in the Final Rule's definition of professional student disqualify a PA degree from being categorized as a professional degree.

9.       Additionally, in the discussion sections of the Federal Register publications of the NPRM and Final Rule, the Department specifically considered PAs and found and concluded that PAs degrees are not professional degrees, based on an additional requirement related to professional supervision that is neither in the statutory definition nor in the Final Rule's new regulatory definition of professional degree.

10.     The Final Rule, therefore, denies PA students Direct Unsubsidized loans under the statute's highest-level caps.

11.     The Associations bring this case because the vast majority of PA students need the higher loan limits authorized for the professional student to be able to attend PA school. Without access to the higher limits, many students will be dependent on private student loans, which have stricter approval requirements, unfavorable interest rates, and limited repayment plan options. This will burden students and deter them from applying to PA programs. In some cases, prospective students will have private loans denied and will be unable to afford the cost of attendance.

12.     Because the Final Rule imposes requirements that were not explicitly authorized in the Act, but that severely reduce the broad scope of professions Congress intended to give access to a higher loan limit as professional students (which would include PAs), the Associations pray that the court declare the Final Rule in violation of the Administrative Procedures Act, vacate the definitions of professional student and professional degree in the Final Rule, and address the Department's similarly unlawful specific disqualification of PA degrees by declaring that PA degrees meet the statutory definition of professional degrees so that PA students may acquire the higher level federal Direct loans to finance their PA education.  This relief requested would remedy

the harm that would occur to PA students, PAs, and PA educational institutions and the nation's already overburdened healthcare system if the Final Rule were to go into effect.

## JURISDICTION AND VENUE

13.     The Court's jurisdiction is appropriate under 28 U.S.C. § 1331 because the claims in this complaint arise from the Administrative Procedure Act, 5 U.S.C. § 702 and, therefore, pose a federal question.

14.     This Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201–2202, 5 U.S.C. §§ 705–706, and the Court's inherent authority to enjoin federal officials.

15.     This judicial district is the proper venue to hear these claims under 28 U.S.C. § 1391(e) because the Defendants Secretary Linda McMahon and the U.S. Department of Education, as well as the Plaintiff PAEA, have their offices in the District of Columbia. Plaintiff AAPA is headquartered in Alexandria, VA.

## PARTIES

16.     Defendant Linda McMahon is sued in her official capacity as the Secretary of the U.S. Department of Education.

17.     Defendant the U. S. Department of Education is an executive department of the United States federal government, headquartered in Washington, D.C.

18.     Plaintiff PA Education Association (PAEA) is the only national organization representing 330 PA educational programs in the United States. Currently, all accredited PA programs in the United States are members of PAEA, which provides information, continuing education, and public advocacy for its member programs, their faculty members, applicants to PA programs, PA students, and other stakeholders.

19.    PAEA is an advocate for its members' interests in both regulatory and legislative areas at both the state and federal level.  PAEA submitted comments to the NPRM challenged here.

20.    PAEA has standing to bring this litigation in its representative capacity.

21.    Many of PAEA's members also submitted comments to the NPRM explaining how the rule would injure their institutions and PA programs.

22.    PAEA's members would suffer negative consequences under the Final Rule due to lower enrollment, admittance of less-qualified applicants, decreased revenue, and a more difficult financial environment to provide a PA education if PA students are suddenly denied access to the higher loan amounts which allow them to attend PA programs.

23.    Plaintiff American Academy of Physician Associates (AAPA) is the national professional society for PAs, with 74,271 members who are PAs, PA students, and those preparing to enter PA schools. Headquartered in Alexandria, Virginia, AAPA works to ensure the professional growth and personal excellence of the PAs, and it advocates on behalf of the profession and the patients PAs serve. AAPA's activities serve the more than 200,000 PAs across all medical and surgical specialties in all 50 states, the District of Columbia, U.S. territories, and the uniformed services.

24.    AAPA also provides continuing medical education ("CME") programs, which are required for PAs to maintain certification and to advance their knowledge, skills, and abilities for the entirety of their careers.

25.    A significant portion of AAPA activities are funded by membership dues which bring in revenue of $15.1 million and CME tuition which generates approximately $2.3

million annually. If the Final Rule is permitted to go into effect and the rule results in fewer individuals being able to pursue PA degrees, AAPA membership will surely suffer. The reduction in associated revenue will harm the association's ability to provide the same level of service and advocacy it now provides to the PA profession and patient interests.

26. AAPA and many of its members submitted comments to the NPRM explaining how the rule would harm them.

27. AAPA has standing to bring this action in its representative capacity on behalf of its members.

**LEGAL AND FACTUAL FRAMEWORK**

**PHYSICIAN ASSISTANTS/ASSOCIATES**

28. The PA profession was created to improve and expand access to healthcare. In the mid-1960s, healthcare experts and educators recognized there was a shortage of primary care physicians in the United States. To help remedy this, Eugene A. Stead Jr., MD, of the Duke University Medical Center, assembled the first class of PAs in 1965. The class consisted of former Navy Corpsmen who had previously received significant medial training in the military. Dr. Stead based the curriculum of the new PA program on his knowledge of fast-track training of doctors during World War II. The first PA class graduated from the Duke University PA program on Oct. 6, 1967.

29. The PA profession is a long-standing one that has gained federal acceptance and backing since its inception as a creative solution to physician shortages. The medical community helped support the new profession and spurred the setting of accreditation standards, the establishment of a national certification process and standardized examination, and the development of continuing medical education requirements.

**THE HISTORICAL REGULATORY SETTING**

30.     In 1993, Congress established the Direct Loan Program, which provides federally financed student loans to individuals enrolled in eligible institutions, without the typical creditworthiness requirements associated with private loans that young people often lack. Student Loan Reform Act of 1993, Title IV of the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312 (1993).

31.     Since 2006, the federal government offered a loan program known as the Federal Direct PLUS Program ("Grad PLUS"), which authorized the Department to grant loans to eligible students seeking a graduate or professional degree. 20 U.S.C. § 1087e (Supp. IV 2006). This program expanded access to graduate education and allowed more graduate students to finance the costs associated with their desired program of study.

32.     The Department established who was eligible for Grad PLUS loans by defining "graduate or professional student" and "professional degree:"

> Graduate or professional student: A student who—
>
> (1) Is not receiving title IV aid as an undergraduate student for the same period of enrollment;
>
> (2) Is enrolled in a program or course above the baccalaureate level or is enrolled in a program leading to a *professional degree*; and
>
> (3) Has completed the equivalent of at least three years of full-time study either prior to entrance into the program or as part of the program itself. (Authority: 20 U.S.C. 1082 and 1088)
>
> *                *                *
>
> Professional degree: A degree that signifies both completion of the academic requirements for beginning practice in a given profession and a level of professional skill beyond that normally required for a bachelor's degree. Professional licensure is also generally required. Examples of a professional degree *include but are not limited to* Pharmacy (Pharm.D.), Dentistry (D.D.S. or D.M.D.), Veterinary Medicine (D.V.M.),

7

Chiropractic (D.C. or D.C.M.), Law (L.L.B. or J.D.), Medicine (M.D.), Optometry (O.D.), Osteopathic Medicine (D.O.), Podiatry (D.P.M., D.P., or Pod.D.), and Theology (M.Div., or M.H.L.). (Authority: 20 U.S.C. 1082 and 1088)

*See Federal Student Aid Programs*, 72 Fed. Reg. 62014, 62024–25 (Nov. 1, 2007); 34 C.F.R. § 668.2(b) (emphasis added).

33.    The enumerated examples of a professional degree in the regulation are precisely that—***examples.*** The Department deliberately made the list illustrative as opposed to exclusive or exhaustive when it adopted this definition in 2007.

34.    PA degrees meet this regulatory definition of professional degree because a student must complete specific academic requirements exceeding the requirements normally required for a bachelor's degree to obtain a master's degree, the entry-level degree for the PA profession. Earning a PA degree allows PA school graduates to take a certification examination to obtain a professional license to practice as a PA.

35.    PA students who attend an institution participating in the Direct Loan Program have enjoyed access to Direct Unsubsidized and Grad PLUS loans since 2006, because they meet the definition of "graduate or professional student."

36.    Grad PLUS loans allowed students to borrow up to the cost of attendance of the degree program, which includes the direct costs of the program (tuition, fees, etc.) and the indirect costs the institution estimates the student will incur while enrolled in the program such as housing, food, books and supplies, transportation, and other miscellaneous costs.

37.    Tuition for PA programs at public institutions exceeds $68,323 for in-state students and $108,507 for non-residents. At private institutions, the average tuition is $113,744. These figures do not include other program fees and living expenses.

8

38.     Thus, having access to substantial loans has been critical for a majority of students to be able to pursue this field of study. According to the Department's Final Rule, in academic year 2023-24, 19,580 out of 25,740 (76%) PA student borrowers relied upon Grad PLUS loans.  *Reimagining and Improving Student Education – Federal Student Loan Program Final Regulations,* 91 Fed. Reg. 23768, 23850 (May 1, 2026).

**2025 STATUTORY CHANGES TO THE FEDERAL DIRECT LOAN PROGRAM**

39.     In 2025, Congress passed legislation establishing new caps on the educational loans students could obtain.  "One Big Beautiful Bill Act," Pub. L. No. 119-21, § 81001, 139 Stat. 72, 335 (2025) ("the Act"); 20 U.S.C. § 1087e.

40.     The Act eliminated the Grad PLUS program and created annual and aggregate lifetime limits for Direct Unsubsidized loans, with different levels for different categories of students. *Id*.

41.     The Act maintained the annual loan cap for graduate students ($20,500 per year) and established a higher loan cap ($50,000 per year) for professional students, and enacted new definitions of those terms. "One Big Beautiful Bill Act," Pub. L. No. 119-21, § 81001, 139 Stat. 72, 335 (2025); 20 U.S.C. § 1087e.

42.     Congress adopted into the statute the same definition of professional degree that the Department adopted into its regulations in 2007:

> (ii) Professional student. In this paragraph, the term "professional student" means a student enrolled in a program of study that awards a professional degree, as defined under section 668.2 of title 34, Code of Federal Regulations (as in effect on the date of enactment of this paragraph [enacted July 4, 2025]), upon completion of the program.

9

20 U.S.C. § 1087e(a)(4)(C)(ii); *see also* 34 C.F.R. § 668.2(b); *Federal Student Aid Programs*, 72 Fed. Reg. 62014, 62025 (Nov. 1, 2007).

43.     Because PA degrees met the elements of the regulatory definition of professional degree before the Act was passed, PA students naturally meet the statutory definition of professional student adopted in the Act, and they should have access to the professional degree loan limit.

**THE DEPARTMENT OF EDUCATION'S RISE RULEMAKING**

44.     In January of 2026, the Department published the NPRM entitled *Reimagining and Improving Student Education*, 91 Fed. Reg. 4254 (proposed Jan. 30, 2026).

45.     The Department published its Final Rule on May 1, 2026. *Reimagining and Improving Student Education – Federal Student Loan Program Final Regulations,* 91 Fed. Reg. 23768 (May 1, 2026).

46.     PAEA, AAPA and numerous individual members of both organizations submitted comments to the NPRM describing how the proposed rule conflicted with the governing statute, that the regulatory language was internally inconsistent, and how the Department's specific finding that PA degrees were not professional was based on an incorrect factual finding, how that finding added another requirement to the definition of professional student not found in the statute or proposed regulatory language, and how that additional requirement conflicted with the proposed regulatory language.  The Final Rule cured none of these defects.

10

47.     In the Final Rule, the Department promulgated definitions of "graduate student,"

"professional student," and "professional degree" that are different from the statutory

definitions enacted by Congress in the Act.

48.     The Final Rule redefined professional degree within its definition of professional

student, departing from the statutory definition of professional degree.

> Professional student: A student enrolled in a program of study that awards a
> professional degree upon completion of the program;
>
> (i)      A professional degree is a degree that:
>
>> (A) Signifies both completion of the academic requirements for beginning
>> practice in a given profession, and a level of professional skill beyond that
>> normally required for a bachelor's degree;
>>
>> (B) Is generally at the doctoral level, and that requires at least six
>> academic years of postsecondary education coursework for completion,
>> including at least two years of post-baccalaureate level coursework;
>>
>> (C) Generally requires professional licensure to begin practice; and
>>
>> (D) Includes a four-digit program CIP code, as assigned by the institution
>> or determined by the Secretary, in the same intermediate group as the
>> fields listed in paragraph (ii)(A) of this definition.
>
> (ii) A professional degree may be awarded in the following fields:
>
>> (A) Pharmacy (Pharm.D.), Dentistry (D.D.S. or D.M.D.), Veterinary
>> Medicine (D.V.M.), Chiropractic (DC or DCM.), Law (L.L.B. or J.D.),
>> Medicine (M.D.), Optometry (O.D.), Osteopathic Medicine (D.O.),
>> Podiatry (D.P.M., D.P., or Pod.D.), Theology (M.Div., or M.H.L.), and
>> Clinical Psychology (Psy.D. or Ph.D.).

*Reimagining and Improving Student Education-Federal Student Loan Program Final*

*Regulations,* 91 Fed. Reg. 23768, 23882 (May 1, 2026).

49.     The Rule's definition of professional degree adds requirements not contained in

the statutory definition, specifically 1) that the degree be "generally at the doctoral level,

2) that the degree require at least six academic years of postsecondary education

coursework for completion, and 3) that the degree program have "a four-digit program CIP code…in the same intermediate group as the field listed in paragraph (ii)(a) of this definition." *Id*.

50. CIP Codes are numerical codes used by the Integrated Postsecondary Education Data System ("IPEDS") to classify programs of study. Six-digit CIP Codes are tied to the specific program (i.e. 51.0912 for PAs) and the four-digit and two-digit categorizations are progressively broader. CIP Codes are not referenced in the statutory definition of professional degree.

51. The Final Rule also ignores Congress' intent for the list of degree programs in the statutory definition to be an illustrative, non-exclusive list of examples of degree programs that would be categorized as professional under the definition.  The Final Rule instead describes the list as the exclusive list of degrees that will be considered a professional degree. *Id.*

**THE FINAL RULE DISQUALIFIES PA STUDENTS FROM HIGHER LOAN AMOUNTS.**

52. Because the PA profession requires a master's degree for entry into practice, instead of a doctoral degree, and PA degrees are not named in the Final Rule's exclusive list of professional degrees, the PA degree does not meet the new regulatory definition of a professional degree. As a result, PA students cannot qualify for the higher-level loan amounts available to professional students.

53. Separately from the new restrictive definition of professional student in the Final Rule's regulatory language, the Department concluded in its NPRM's and Final Rule's regulatory analysis that PA degrees are not professional degrees because the majority of

states require a PA to collaborate with (or be directly supervised by) a physician or other health care provider in order to practice and prescribe medication, and most states do not provide for independent practice authority for licensed PAs. *Reimagining and Improving Student Education-Federal Student Loan Program Final Regulations*, 91 Fed. Reg. 23768, 23799-23800 (May 1, 2026).

**THE HARM CAUSED BY THE FINAL RULE**

54.     Beginning on July 1, 2026, prospective PA students will be harmed because, without access to the higher loan limit available to professional students, many of them will be unable to qualify for alternate financing options to attend school to become a PA. Those who can find private financing will be subject to much higher interest rates.

55.     With fewer students who can obtain sufficient funding to attend PA programs, schools that have provided PA programs will be injured by the reduction in student enrollment or admittance of less-qualified applicants, which could, in turn, impact program outcomes such as graduation rates and licensure exam passage rates, thus threatening the continued existence of these programs.

56.     With fewer PAs being educated, there will be fewer healthcare professionals trained to meet the needs of our already overburdened healthcare system, especially in rural areas which rely on PAs to fill provider shortages.

**THE RISE FINAL RULE CONFLICTS WITH THE STATUTE AND WITHIN ITSELF.**

57.     The Departments' definition of professional degree in the Final Rule conflicts with the statute by adding requirements for classification as a professional degree that are

13

not contained in the statute and, therefore, exclude degrees, such as the PA degree, that otherwise meet the definition of professional degree under the Act.

58.     The Final Rule's regulatory text is internally inconsistent by adding requirements to be a professional degree that cannot be met by all of degrees on the list deemed as professional in the same regulation. For example, the listed Theology (M.Div., or M.H.L.) degrees and the L.L.B. law degree are not doctoral degrees, meaning they do not satisfy the new regulatory requirements.

59.     The Department's finding that PAs do not hold a professional degree because half of the states require PAs practice and prescribe medicine under the supervision of another professional adds a new requirement for professional degree that is not found in and conflicts with the statutory definition of professional degree.

60.     The Department's finding and conclusion that PAs do not hold a professional degree because half of the states require PAs to practice and prescribe medicine under the supervision of another professional is inconsistent with the Final Rule by adding a requirement not expressed in the regulatory text.

61.     The Department's finding that a PA does not hold a professional degree because half of the states require PAs practice and prescribe medicine under the supervision of another professional conflicts with the Final Rule's list of specific professional degrees. For example, some states recognize special classifications that allow graduates with a M.D. degree who have not matched with a residency to practice under supervision. In addition, pharmacists, who hold a Pharm.D. degree, enter collaboration agreements with prescribers to expand their practice to include medication management. These M.D. and

14

Pharm.D. degrees would not qualify as professional degrees under the standard the Department applied to PA degrees.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT-- CONTRARY TO LAW (5 U.S.C. § 706(2)(A))

1.      Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs.

2.      A reviewing court must "hold unlawful and set aside agency actions findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A).

3.      The Department acted without Congressional authority to rewrite the definitions of professional student and professional degree that Congress established in the 2025 Act.

4.      The Department included requirements in the definition of professional degree that are not imposed or expressly authorized by Congress and instead limit the definition through regulation to exclude degrees and students that would be included under the statutory definition.

5.      The Department expressly finds and concludes that PA degrees are not professional degrees based on a requirement that professional degree holders work free from another professional's supervision and in about half of the state PAs do not.  This requirement is neither contained in the statutory definition of professional degree, nor stated in the Department's new regulatory definition of professional degree.

15

6.      The Department created an exclusive list of degrees considered to be professional

degrees, although Congress codified a similar, though non-exhaustive, list as *examples* of

professional degrees under its definition.

7.      For these reasons, because the Department's Final Rule is not in accordance with

law and exceeds the Department's statutory authority, the Court must find that it is

unlawful and set it aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

and (C).

**COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT--
CONTRARY TO LAW AND ARBITRARY AND CAPRICIOUS
(5 U.S.C. § 706(2)(A))**

1.      Plaintiffs re-allege and incorporate by reference all prior and subsequent

paragraphs.

2.      A reviewing court must "hold unlawful and set aside agency actions findings and

conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or

short of statutory right."  5 U.S.C. § 706(2)(A).

3.      The Department acted without Congressional authority to find and conclude that

PA degrees are not professional degrees because in half of the states PAs are required to

associate with or work under other professional degree holders in order to practice and

prescribe medicine.

4.       The Department's determination that professional degree holders must work free

from another professional's supervision, and PAs do not is, in effect, another requirement

to be qualified as a professional degree. But this requirement is not contained in the

statutory definition of professional degree, is not stated in the Final Rule's new regulatory definition of professional degree, and is not expressly authorized by Congress.

5.    This requirement that professional degree holders must work free from another professional's supervision excludes degrees that would otherwise be included under the statutory definition of professional degree.

6.    The Department findings and conclusions that PA degrees are not professional degrees based on a requirement that professional degree holders work free from another professional's supervision conflict with the regulatory language of the Final Rule because several of the degrees specifically named as professional degree would also be disqualified by a requirement that they be free from professional supervision.

7.    The Department's finding and conclusion that PA degrees are not professional degrees is not in accordance with law, is made beyond the Department's statutory authority, and is unreasonable, arbitrary and capricious. Thus, the Court must find that this finding and conclusion specific to PAs is unlawful and set it aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C).

**COUNT III: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))**

1.    Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs.

2.    The requirements listed in the definition of professional degree in 34 C.F.R. § 685.102(b)(i) of the Final Rule conflict with the actual degree requirements for the degrees listed as professional under subsection (ii).

3.    The Department states its specific disapproval of PA degrees as professional degrees because half of states require PAs to work under another professional's

17

supervision, a requirement found neither in the statutory definition of professional degree nor in the Department's new definition of professional degree.

4.      The Department's application of a requirement that a professional degree holder be free from supervision by another professional conflicts with the actual requirements of individuals with several of the professional degrees in the Final Rule's approved list of professional degrees.

5.      Because of these internal conflicts and the inconsistent policy expressed within the Final Rule's regulatory language, and between the Department's finding and conclusion about PAs and the Final Rule's regulatory language, the Court must find that the Final Rule, and the Department's specific findings and conclusions that PA degrees are not professional degrees, are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C).

### PRAYERS FOR RELIEF

Plaintiff Associations respectfully request that this Court:

1.  Declare that the U.S. Department of Education's Final Rule establishing a definition of professional degree at 34 C.F.R. § 685.102(b) violates the APA and is otherwise unlawful;

2.  Declare that the Department's specific findings and conclusions that PA degrees are not professional degrees violate the APA and are otherwise unlawful;

3.  Declare that PA degree programs offered and pursued by Plaintiffs' members are professional degrees as defined under the statute, and PA students are,

therefore, professional students eligible for higher Direct Unsubsidized loan amounts under 20 U.S.C. § 1087e(a)(4)(C)(ii);

4. Vacate and set aside the Department's rule defining professional degree and permanently enjoin the Department from relying on or enforcing that and any other unlawful definition; and,

5. Enjoin the July 1, 2026 effective date of the Department's Final Rule defining professional degree until the resolution of this litigation and the Department has promulgated rules in accordance with the law, if necessary.

Respectfully submitted,

/s/ *Paul D. Cullen, Jr.*
Paul D. Cullen, Jr. / Bar No. 463759
Kathleen Balthrop Havener / Bar No. 432638
The Cullen Law Firm, PLLC
1101 30th Street
Suite 500
Washington, DC 20007
202-298-4775
kathleen@cullenlaw.com
202-298-4774
paul@cullenlaw.com

*Attorneys for Plaintiffs*

*PA Education Association and*
*American Academy of Physician Associates*